Berkshire Downs, Inc. *v.* State Racing Commission.

BERKSHIRE DOWNS, INC. *vs.* STATE RACING COMMISSION
& another.

Suffolk.     April 5, 1966. — May 4, 1966.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Racing. License. Words,* "So approved," "Grant."

A license for racing meetings is "granted" by the State Racing Commission within the meaning of that word in G. L. c. 128A, § 13A, when the commission votes favorably on an application for a license, not when it formally issues it.   [699]

Under G. L. c. 128A, § 13A, both approval by the selectmen of a town of the location therein of the track for proposed racing meetings and ratification of such approval by a majority of the registered voters of the town voting at the next annual election are required before the State Racing Commission has authority to act on an application for a license to hold the racing meetings; and where it appeared that on January 17 of a certain year the selectmen approved the location, that the six year effective period of the next prior approval had expired before that year, that an application for a license to hold meetings at the track in that year was filed with the commission on January 4, that under § 2 the commission was prohibited from acting on the application after January 30, and that under G. L. c. 39, § 9, the annual town election would not be held until after January 30, the commission had no authority to act on the application and rightly dismissed it on January 27 [699–700]; CUTTER, J., concurring in the result.

In the year of expiration of the six year period for which, under G. L. c. 128A, § 13A, an approval by the selectmen of a town, ratified by its voters, of the location of a track therein for racing meetings was effective, the State Racing Commission would not be prevented from granting, on or before January 30, an application for a license to hold meetings at the track in that year, or from issuing the license certificate after the expiration of the six year period.   [703]

PETITION for review filed in the Superior Court on February 2, 1966.

The case was reported by *Ford, J.*

*Avram G. Hammer* (*Richard C. Sheppard* with him) for the petitioner.

*Peter Roth,* Assistant Attorney General, for the State Racing Commission.

*Lee H. Kozol,* for the intervener Eastern Racing Association, Inc.

SPIEGEL, J.   This is a petition brought under G. L. c. 30A, § 14, for review of two decisions of the State Racing Commission (commission).   One dismissed the application of Berkshire Downs, Inc. (Berkshire) for a twenty-four day running horse racing meeting for the year 1966, and the other granted the applications of Eastern Racing Association, Inc. (Eastern) for two such meetings, for a total of ninety racing days.   Eastern filed a notice of intervention. A judge of the Superior Court reported the case without decision under G. L. c. 214, § 31, "upon the Petition for Review, the Notice of Intervention, the return of the Respondent and the Stipulation as to agreed facts."

On January 20, 1953, the selectmen of the town of Hancock approved the location of a race track in that town. This approval was "ratified and confirmed" by a majority of the voters of the town voting at the next annual election held on February 2, 1953.   A record of these votes was attached to the application for a license "filed by Hancock Raceway, Inc. [Hancock] in the year of 1959 which application was dismissed by the Commission."   The selectmen again approved the location of the race track on January 23, 1959, and this approval was "ratified and confirmed" by the voters at the annual town election held on February 2, 1959.   A record of these votes was attached to the application for a license filed by Hancock in 1960.   The commission issued licenses for racing meetings to be held at this location for the years 1960 through 1965.

On January 4, 1966, Eastern filed applications for licenses to conduct two running horse racing meetings totaling ninety days at its track in Revere and East Boston known as Suffolk Downs.   That same day Berkshire filed an application for a license to conduct a twenty-four day running horse racing meeting at the track in Hancock.[1]   On January 17, 1966, the selectmen of Hancock again approved the location of the track.   At the hearing on Eastern's appli-

---

[1] General Laws c. 128A, § 3 (f), provides: "No licenses shall be issued for more than an aggregate of ninety racing days in any one year at all running horse race meetings combined."

cation Berkshire was allowed to intervene and at the hearing on Berkshire's application Eastern was allowed to intervene. After the hearings the commission reached the following "conclusions." "1. The physical facilities offered by Eastern to the public are far superior to the facilities available at Berkshire . . . . 2. Eastern offers a better quality of racing . . . . 3. Eastern is more conveniently located and available to a larger number of people . . . . 4. The past history of the operation of Berkshire and Eastern indicates that Eastern will draw a much larger daily attendance resulting in increased pari-mutuel handle with a resultant increase in revenue to the Commonwealth. 5. The losses as shown on the Financial Statement of Berkshire for the years of 1964 and 1965 indicate that the Berkshire track lacks public acceptance. 6. The application of Berkshire Downs, Inc. is not in proper form in that it does not comply with the provisions of Section 13–A of Chapter 128A of the General Laws." On January 27 the commission dismissed Berkshire's application in its entirety, and the following day the commission granted Eastern's applications in their entirety.

The approval of the track location by the selectmen of Hancock was ratified by a vote of the majority of the registered voters of the town voting at the annual election held on February 7, 1966.

Under G. L. c. 128A, § 2, "Any person desiring to hold or conduct a horse or dog racing meeting within the commonwealth shall make an application to the state racing commission . . . for a license so to do. . . . Such application . . . shall be filed with the commission on or before the fifth day of January of the calendar year for which such application requests a license to be issued under this chapter; and the commission shall grant or dismiss such application not later than the thirtieth day of January thereafter."

There are two issues presented in this case. The first is whether the application of Berkshire failed to comply with G. L. c. 128A, § 13A, because the approval by the selectmen of the location of the track was not ratified by the town un-

til after the date for granting or dismissing the application had passed. The second issue is whether the remaining findings and conclusions of the commission supported its decisions.

Regarding the first issue, G. L. c. 128A, § 13A, reads in pertinent part: "[N]o license shall be granted by the commission for a racing meeting in any city or town . . . unless the location of the race track where such meeting is to be held or conducted has been once approved by the mayor and aldermen or the selectmen . . . . Provided, nevertheless, that in the case of towns said approval by the selectmen . . . shall not become effective unless and until it shall be ratified and confirmed by vote, taken by Australian ballot, of a majority of the registered voters of said town voting at the next annual election. . . . Said approval by the selectmen of the location of a race track . . . shall be effective for a period of six years at the expiration of which time the location shall again be so approved before the commission shall grant a license for a racing meeting in said town."

Berkshire contends that "c. 128A, § 13A does not require ratification of the selectmen's approval prior to the commission's granting a license. Section 13A provides that 'said *approval by the selectmen* . . . shall be effective for a period of six years at the expiration of which time the location shall again be *so approved* before the commission shall grant a license . . . .' It does not say that the location shall again be 'so approved and ratified' prior to the grant." Berkshire also argues that ratification relates back to the act ratified.

The words "so approved" refer to an approval by the selectmen which is effective for six years, but the statute provides that "said approval by the selectmen . . . shall not become effective *unless and until* it shall be ratified and confirmed . . ." (emphasis supplied). To give effect to the selectmen's approval prior to its ratification at the next annual election would be contrary to the express language of the statute. As we said in *Selectmen of Topsfield* v.

*State Racing Commn.* 324 Mass. 309, 313, "The dominant purpose of the statute was to give the registered voters in towns the right to say whether the approval of the selectmen should be ratified or rejected." We do not think the statute contemplates the granting of a license before the registered voters of a town have had the opportunity to exercise that right.

Berkshire also contends that c. 128A, § 13A, "does not require that such ratification occur prior to the granting or dismissal of the application." It points to the application form prescribed by the commission which states on its first page: "Notice to Applicant: The allotment of racing dates does not constitute the issuance of a license. The Commission may impose such conditions in the allotment of dates as it may see fit, to be fulfilled before the license certificate will be issued." Berkshire argues that a license is "granted" when it is issued and not when the application for a license is granted, and therefore § 13A does not apply to the allotment of racing dates. Berkshire claims that under the provisions of § 2 the commission has authority to allot dates subject to the condition that the applicant obtain the approval of the selectmen and the ratification and confirmation by the voters of such approval prior to the actual issuance of the license.

We are unable to agree with this contention. Approval and ratification are not conditions which "[t]he Commission may impose." These are statutory requirements under § 13A, and "no license shall be granted" unless and until these requirements are met. "Grant" is defined in part as "to agree or assent to; to allow to be fulfilled; to accord" (Webster's New International Dictionary [2d ed.]); "to consent to carry out for a person: allow, accord" (Webster's Third New International Dictionary).

We believe that, even by this definition, a license is "granted" when the commission votes favorably on the application. In that event, the remaining action of the commission is the formal issuance of the license. We are of opinion that approval and ratification are required be-

fore the commission has authority to act on the application.

It appears to us that the construction of the statute for which Berkshire contends would result in giving the word "grant" different meanings in different sections of the same statute. It contends that the "grant of application" under § 2 is not to be equated with a "grant of license" under § 13A. Berkshire appears to argue that with reference to the granting of the license, the word "grant" means the formal issuance of a license, yet Berkshire does not argue that the word "grant" in § 2 has anything to do with the issuance of a license. "It is a general rule of statutory construction that ordinarily a term appearing in different portions of a statute is to be given the same meaning." *Arnold* v. *Commissioner of Corps. & Taxn.* 327 Mass. 694, 700.

Furthermore, if we followed Berkshire's interpretation, the commission would be required to pass on applications which were filed even prior to the approval by the selectmen. We assume that in such an event Berkshire would argue that the commission could pass on the application subject to the condition that the selectmen would subsequently approve the site of the track meeting, and, of course, also subject to the subsequent ratification by the voters of the town.

The explicit provision in § 2 fixing a time within which the commission must act on the application reveals to us the intention of the Legislature that there should be a final decision by that date. It is true that § 9 gives the commission authority to make rules, regulations and conditions, and § 11 gives the commission authority to "suspend or revoke" a license. There is, however, nothing unusual in such statutory provisions. Quite obviously, such provisions are often necessary to maintain orderly procedure and to adjust to unusual conditions which are not ordinarily foreseeable when legislation is enacted. We are satisfied that the "conditions" referred to in § 9 are "conditions" "under which . . . horse . . . racing meetings shall be conducted" and are not to be confused with statutory con-

ditions which must be complied with precedent to the commission's authority to act. We believe that to reach the result suggested by Berkshire's interpretation would frustrate the very purpose of § 2. It would, we think, militate against providing for a final decision on the awarding or withholding of dates by January 30.

We note, too, our decision in *Selectmen of Topsfield* v. *State Racing Commn.* 324 Mass. 309. In that case, the selectmen of Topsfield had approved the location of a track in 1947. In May of 1948, St. 1948, c. 437, was passed amending G. L. c. 128A, § 13A, to require ratification of the approval of the selectmen at the next annual election. In January of 1949 an application for a license was filed. On January 25, 1949, a petition for a writ of mandamus was brought to restrain the commission from taking action on the application. The question of ratification did not appear on the ballot at the first annual election following the enactment of the amendment to the statute. The issue presented was whether St. 1948, c. 437, applied so as to require ratification of an approval which was obtained prior to its enactment. We said (p. 312) that *if St. 1948, c. 437,* "*is applicable* to the . . . application for a license now pending before the commission . . . *the commission is without authority to pass upon the application*" (emphasis supplied). Although that case is distinguishable on its facts, it at least suggests that ratification is required before the commission can take any action.

Additional support for our view that the statute requires approval and ratification prior to the grant of a license by the commission is found in the very practice of Berkshire's predecessor, Hancock. In submitting its application for a license in 1959 it included records of the approval and ratification of 1953; and in submitting its application for 1960, it included records of the approval and ratification of 1959.

Although, as shown above, it is clear to us that approval of the selectmen and ratification by the voters are statutory conditions precedent to any action that may be taken by the commission on the application, there is no doubt that the

provisions of the statute are somewhat confusing. This is primarily because ratification of the selectmen's approval must take place "at the next annual election," which, under G. L. c. 39, § 9, "shall be held in February, March or April." The racing season is from April 1 to November 30. G. L. c. 128A, § 3 (d). Thus, a racing season would elapse between the date a track location is approved and ratified and the date the application for a license may be granted. This makes it difficult to interpret the last sentence of § 13A, which provides that an approval which is effective (i.e. ratified) "shall be effective for a period of six years at the expiration of which time the location shall again be so approved before the commission shall grant a license." If a new approval and ratification cannot be obtained until the old one expires and a racing meeting may not be held unless there is an approval which is effective on the date of the meeting, an applicant would be forced to forego racing every sixth year. It is inconceivable that the Legislature intended an intermission of one year every six years. Certainly, such a result is not "clearly required" by the language. See *Curran, petitioner,* 314 Mass. 91, 95. If a new approval and ratification may be obtained prior to the expiration of the old one, and an effective approval on the date of the racing meeting is required, an applicant would be forced to obtain approval and ratification every five years. It is evident to us that the intent of the Legislature was to require a new approval to be obtained every six years, since an approval was to "be effective for a period of six years."

On the other hand, it may be argued that if an approval and a ratification are required at the expiration of every six years from the date of ratification, then it is possible that a racing meeting would be held in the very year in which the voters of the town refused to ratify the approval of the selectmen. However, we see nothing in the statute to bar such a result, nor do we think it unreasonable or even unusual. Six years earlier the voters agreed to permit racing for a period of six years. The refusal to ratify the

subsequent approval simply means that the voters do not want to approve racing for the following six years and does not affect the previous ratification. In this connection, it may be of significance that in the case of *North Shore Corp.* v. *Selectmen of Topsfield,* 322 Mass. 413, we held that an approval could not be rescinded.

If the commission acts favorably on an application for the sixth year covered by the approval and ratification, there is no statutory provision preventing the commission from performing the formal act of issuing the license certificate for that year subsequent to the date of the expiration of the ratification. This interpretation, it seems to us, was adopted by Hancock when it obtained a new approval and ratification in 1959, six years after the previous approval in 1953 expired. It was also adopted by the commission in granting a license to Berkshire to conduct races in 1965 although the approval and ratification were in 1959. We are satisfied that this construction affords a workable and practicable means of making the statute "an effectual piece of legislation." See *Commonwealth* v. *Slome,* 321 Mass. 713, 716; *Sun Oil Co.* v. *Director of the Div. on the Necessaries of Life,* 340 Mass. 235, 238.

In view of our determination that ratification by the voters of the town was required before the commission could act on Berkshire's application, the second issue has become moot. A decree is to be entered affirming the decisions of the State Racing Commission.

*So ordered.*

CUTTER, J. (concurring) I concur in the result on the authority of what was said in *Selectmen of Topsfield* v. *State Racing Commn.* 324 Mass. 309, 312.