Rockingham,
Nos. 6389 and 6390.

TOWN OF SEABROOK *v.* JOHN I. PERKINS *& a.*

TOWN OF WINDHAM *v.* ROBERT A. SKINNER *& a.*

March 2, 1972.

*Robert G. Tetler* and *Gary W. Holmes* (*Mr. Tetler* orally) for plaintiff town of Seabrook.

*Green, Romprey, Sullivan & Beaumont* (*Mr. Urville J. Beaumont* orally) for plaintiff town of Windham.

*Hamblett, Kerrigan, LaTourette & Lopez* and *John P. Griffith* (*Mr. Joseph M. Kerrigan* orally) for intervenor, Granite State Greyhound Association, Inc.

The defendants, pro se, filed no briefs.

KENISON, C.J. Petition for declaratory judgment (RSA 491:22) to determine whether the prior votes of the towns of Seabrook and Windham in 1971 approving of the issuance

of a license for the holding of dog race meets in those towns (RSA 284:15-c(supp.), Laws 1971, 541:8) can be rescinded at the forthcoming March 7, 1972, town meeting. It is not disputed that the defendants seek another vote in their respective towns to rescind the previous votes approving the issuing of licenses for holding dog race meets by the Greyhound Racing Commission.

The petitions to insert articles in the respective town warrants complied with the requirements of RSA 39:3(supp.), Laws 1971, 79:1. Although there was a question whether such an article should be inserted in the town warrant, the selectmen, due to the exigencies of time and the practicalities of the situation, have inserted it in the respective warrants, inasmuch as there is a penalty for the refusal to do so. RSA 39:3-b(supp.), Laws 1971, 79:4; RSA 587:31.

This is an agreed case, the parties having submitted an agreed statement of facts. No objections were raised to the motion of Granite State Greyhound Association, Inc., to intervene as an interested party. All questions of law raised by the pleadings were reserved and transferred without ruling by *Batchelder*, J. Inasmuch as the decision of this court to be of practical value must be rendered before the annual town meetings on March 7, the supreme court rules relating to the filing of briefs and oral argument were waived. Supreme Court Rules 4, 6, 7 and 9; RSA 490: App. R. 4, 6, 7 and 9. Briefs were ordered to be submitted by February 28 and the case was argued orally on February 29, 1972.

It appears that the intervenor, Granite State Greyhound Association, Inc., has applied to the Greyhound Racing Commission for a license to conduct dog race meets with the town of Windham as its primary site and the town of Seabrook as its alternate site. It has expended in excess of $50,000 in capital funds for site preparation, purchase of options, architectural fees, engineering fees, and other miscellaneous costs in preparing for its application to the New Hampshire Greyhound Racing Commission. It has also filed an application for a building permit in the town of Windham, which has been allowed. All of these actions were taken subsequent to the favorable vote of the towns to permit greyhound racing under the local option section of RSA 284:15-c(supp.), Laws 971, 541:8, which reads as follows: "[New] Local Option.

No license shall be issued by the commission for holding a dog race meet in any city or town until the city or town at an annual or special meeting called for the purpose has by majority vote of those voting on the question approved of the issuance of said license in said city or town. Only one such vote shall be required and annual renewals of licenses previously issued need not be re-submitted for referendum."

Neither counsel nor the court have found any litigated case which is directly in point. In the last analysis we are faced with the question of statutory construction as to whether RSA 284:15-c(supp.), Laws 1971, 541:8 is controlling over other possible pertinent statutes (RSA 39:3 and 3-b(supp.)) and if so, the proper construction of the controlling statute. For reasons which are not entirely clear, litigated cases in this area are sparse and the courts are usually confronted with statutory language which is frequently vague and sometimes confusing. *See* Cowin, Administrative Law *s*. 14.2, "State Racing Commission: Statutory conditions to granting of dates," 1966 Annual Survey of Massachusetts Law, 175-79 (R.G. Huber ed. 1967); *Berkshire Downs, Inc.* v. *State Racing Comm'n*, 350 Mass. 695, 216 N.E.2d 428 (1966); 1 Humphreys, Racing Law ch. 11, at 127-38 (1963); 2 Humphreys, Racing Law 42-44 (1966).

RSA 39:3 permits ten or more voters to present to the selectmen an article to be inserted in the warrant of any annual or biennial meeting on "any subject specified in such application." This statute is of ancient lineage and has been with us since Revised Statutes in 1842. R.S. 32:3. It is of general but not of all-inclusive application and is not applicable where the legislature has treated the "subject specified in such application" in a special, exclusive and different manner. If RSA 39:3 and 3-b(supp.) were applied literally to include any subject it would allow the voters to supersede the legislative will in special situations requiring special treatment. No such motive can be attributed to the legislature. *See Goodrich Falls Co.* v. *Howard*, 86 N.H. 512, 518, 171 A. 761, 764-65 (1934).

The legislature has plenary control over horse racing and dog racing. *North Hampton &c. Ass'n* v. *Commission*, 94 N.H. 156, 159, 48 A.2d 472, 475 (1946). It may grant local option

to the municipalities, or deny it altogether, or grant it on condition. Licenses for racing meets by their nature have to be regulated by one body under tight and strict control. Licenses issue only after the expenditure of considerable sums of money and a certain degree of permanence is essential to proper regulation and control by the racing commission. RSA 284:17. We consider RSA 284:15-c(supp.), Laws 1971, 541:8 a legislative expression that the town was to have one vote of approval and only one vote of approval. To hold otherwise is to disregard the policy of RSA ch. 284 as a whole which is to place the public policy and regulation of racing for the public good in the ultimate control of the racing commission and not in the towns. Our conclusion that RSA 284:15-c(supp.), Laws 1971, 541:8 allows only one vote of approval and does not permit a vote to rescind is substantially strengthened by the prior history of racing laws. When the legislature wanted to give municipalities local option and also the right to rescind they had no difficulty in saying so in clear and unmistakable language. Thus Laws 1933, ch. 62, An Act Relating To Horse Racing And Creating A State Racing Commission, in section 26, gave municipalities local option. Then it further specifically provided in part as follows: "Any town or city which has accepted this act may at any regular or special election called for that purpose by a majority vote of the legal voters present and voting *rescind its acceptance* and thenceforth the provisions of this act shall not be applicable in such town or city." (Emphasis added). This statute was repealed by Laws 1935, 27:25.

While cases directly in point are wanting, the conclusion we reach finds strong support in *North Shore Corp.* v. *Selectmen of Topsfield,* 322 Mass. 413, 77 N.E.2d 774 (1948). In that case it was held that where the voters of a town had once approved the location of a racetrack subsequent votes by the town purporting to rescind such proposal were of no effect. That this policy is not limited to horse racing and dog racing, *see Chief of Police* v. *Dracut,* 357 Mass. 492, 258 N.E.2d 531 (1970).

Since a vote taken under RSA 39:3 and 3-b(supp.) is not controlling of RSA 284:15-c(supp.) and is not applicable thereto, the towns are advised that such a vote should not

be placed on the ballots at the forthcoming annual meetings on March 7, 1972.

*So ordered.*

GRIFFITH, J., did not sit; DUNCAN, J., dissented; the others concurred.

DUNCAN, J., *dissenting:* I see no reason to conclude that RSA 284:15-c(supp.), Laws 1971, 541:8 was intended to limit the power of towns to rescind votes previously adopted, so long as rights of third parties have not intervened. *Frost* v. *Hoar,* 85 N.H. 442, 443, 160 A. 51, 52 (1932), and cases cited. Such steps as were taken by the intervenor were necessary prerequisites to its application for a license, required under RSA 284:16-a(supp.). *North Hampton &c. Ass'n* v. *Commission,* 94 N.H. 156, 48 A.2d 472 (1946). In making its preliminary investment, "it took its chances" on the success of its application. *Id.* at 162, 48 A.2d at 477. Nor do I believe that RSA 284:15-c(supp.), Laws 1971, 541:8 was intended to modify or limit RSA 39:3.

RSA 284:16-a(supp.) requires that licenses be renewed annually. The concluding sentence of RSA 284:15-c(supp.) was obviously enacted to make clear that "only one" vote of approval by a town "shall be required," and that "annual renewals" need not be similarly approved by the voters. The language employed contains no suggestion that it forbids a vote to rescind approval previously voted. Since the intervenor can acquire no right before a license issues, I would hold that full effect should be given to a vote of rescission if properly adopted prior to issuance of a license.