Rockingham
No. 81-420

SEABROOK CITIZENS FOR THE DEFENSE OF
HOME RULE & a.

v.

YANKEE GREYHOUND RACING, INC. & a.

February 18, 1983

*Robert Cushing, Jr.*, of Seabrook, by brief and orally, for himself and other plaintiffs, pro se.

*Devine, Millimet, Stahl & Branch P.A.*, of Manchester (*William C. Saturley* on the brief and orally), for the defendant Yankee Greyhound Racing, Inc.

*Gregory H. Smith*, attorney general (*Peter C. Scott*, assistant attorney general, on the brief and orally), for the State.

*Tetler & Holmes*, of Hampton (*Gary W. Holmes* on the brief and orally), for the Town of Seabrook, as amicus curiae.

BROCK, J.   The plaintiffs, members of an unincorporated association of residents and voters in the Town of Seabrook, filed a petition against the defendants, the State of New Hampshire, the New

Hampshire Greyhound Racing Commission, and Yankee Greyhound Racing, Inc. They sought temporary and permanent injunctions against the licensing and operation of Sunday dog racing at Yankee Greyhound's dog-racing facility in Seabrook and a ruling that RSA 284:17-a, :17-b (Supp. 1981), which repealed local option control over Sunday dog racing, was unconstitutional. Additionally, they sought damages.

The plaintiffs' petition for temporary injunctive relief was denied by the Superior Court (*Temple*, J.). After a hearing on the merits, the Superior Court (*Wyman*, J.) dismissed the plaintiffs' petition. Because the town has filed a similar action in the United States District Court for the District of New Hampshire, the town was permitted to appear as amicus curiae in this appeal, and the case in the federal district court was stayed pending resolution of the instant case. We affirm the decision of the superior court.

On July 7, 1971, the New Hampshire Legislature adopted an act effective September 5, 1971, which authorized dog racing in New Hampshire and established a greyhound racing commission. Laws 1971, ch. 541. The act contained a "local option" provision, the effect of which was to prohibit the commission from issuing a license to operate a dog race meet in any city or town unless the community in question "at an annual or special meeting called for the purpose has by majority vote of those voting on the question approved of the issuance of said license . . . ." *Id.* 541:8 (current version at RSA 284:15-c).

Another act, approved by the legislature on July 6, 1971, authorized Sunday racing, which had not been allowed previously. Laws 1971, ch. 498. Sections one and two of that act eliminated the prohibition on Sunday racing and fixed the State's share of pari-mutuel pools at Sunday races. These provisions became effective immediately, on July 6, 1971. Sections three and four of the act gave towns a "local option" on Sunday racing, by providing that the commission could not issue a license for a race meet on a Sunday "in any town unless and until the town at an annual or special meeting . . . approved of the issuance of said license in said town." *Id.* 498:4 (formerly codified at RSA 284:17-a). Sections three and four did not, however, take effect until December 30, 1971. *Id.* 498:5.

On December 14, 1971, the Town of Seabrook held a special town meeting, at which the voters, by referendum, narrowly approved greyhound racing within their town. On January 2, 1973, the defendant Yankee Greyhound was issued a license by the Greyhound Racing Commission to hold race meets in the town of Seabrook. At town meetings in 1974 and 1979 the citizens of Seabrook voted against allowing Sunday dog racing within the town.

In 1981, the legislature changed the statutory provision governing local control over Sunday racing. Chapter 568, section 107, of the 1981 session laws, with an effective date of July 1, 1981, preserved the local option on Sunday *horse* racing but expressly withdrew local control over Sunday greyhound racing. *See* RSA 284:17-a, :17-b (Supp. 1981). As amended, RSA 284:17-b now provides:

> "The greyhound commission is hereby directed to authorize any licensee who requests same to hold greyhound race meets on Sundays which fall during the time said licensee is authorized to conduct racing. Said Sundays shall not reduce the number of other days said licensee is authorized to conduct racing."

After this amendment to RSA chapter 284 was adopted, Yankee Greyhound applied for and received permission to commence greyhound races on Sundays at its facility in the town of Seabrook. Sunday race meets were conducted in Seabrook through the end of 1981. Yankee Greyhound did not seek a license for Sunday race meets for 1982.

The plaintiffs have raised a multitude of claims in their appeal to this court. They maintain, fundamentally, that the 1981 legislation unlawfully deprived them of a vested right to local control over Sunday greyhound racing. Specifically, they argue that the legislation in question deprived them of an interest in liberty or property protected by the due process and equal protection clauses of the fourteenth amendment to the United States Constitution, and by the due process clause of the New Hampshire Constitution, part I, article 15. In addition, they claim that the legislation constituted a retrospective law forbidden under part I, article 23 of the New Hampshire Constitution, and that it exceeded the power granted to the legislature to enact "wholesome and reasonable" laws under part II, article 5 of the New Hampshire Constitution. Finally, they argue that the manner by which the legislature adopted the statute was procedurally inadequate.

As a preliminary matter, we address certain claims made by Yankee Greyhound and the State of New Hampshire. It is argued first, that the private plaintiffs in this case lack standing to raise this challenge to the 1981 legislation because the rights, if any, which may have been infringed are held only by the Town of Seabrook. It is argued secondly, that the town, as a political subdivision of the State, in turn, would lack standing to bring this fourteenth amendment suit. Finally, it is claimed that even if *standing* exists to support this suit, no fourteenth amendment infringement has been shown, because any *rights* the plaintiffs may assert are only those of

the town itself, which has no fourteenth amendment *rights* against the State.

We conclude that the plaintiffs, in their capacity as taxpayers and citizens of the Town of Seabrook, have standing to challenge the constitutionality of the 1981 legislation. *See Grinnell v. State*, 121 N.H. 823, 825, 435 A.2d 523, 525 (1981); *see also Sedgewick v. City of Dover*, 122 N.H. 193, 194–95, 444 A.2d 490, 490 (1982). We decline to rule on the further question of whether the asserted rights in question belong to the town or its citizens, and/or whether they are limited by fourteenth amendment considerations, for the simple reason that neither the town nor its citizens have any constitutional rights to local option control over greyhound racing.

In addressing the substance of the plaintiffs' claims, we first note, as a practical matter, that when the town voted on December 14, 1971, to approve greyhound racing, there was no statutory provision providing for local option control over Sunday racing, since the 1971 version of RSA 284:17-a did not become effective until December 30, 1971. More fundamentally, however, we reiterate our frequently stated holding that towns and cities have only those powers which are granted to them by the legislature. *Public Service Co. v. Town of Hampton*, 120 N.H. 68, 71, 411 A.2d 164, 166 (1980).

While the legislature often defers to the "home-rule tradition" in its proceedings, its exercise of its plenary power over municipalities is limited only by provisions of our State Constitution which grant municipalities only the right to control the form of their local government as enacted in their charters. N.H. CONST. pt. I, art. 39; *Dover v. Wentworth-Douglas Hosp. Trustees*, 114 N.H. 123, 125, 316 A.2d 183, 184 (1974); *see Harriman v. City of Lebanon*, 122 N.H. 477, 480–82, 446 A.2d 1158, 1160–61 (1982); *Sedgewick v. City of Dover*, 122 N.H. at 197–98, 444 A.2d at 492–93. Otherwise, the legislature may grant, withhold, or withdraw local control as it sees fit. *Region 10 Client Mgt., Inc. v. Town of Hampstead*, 120 N.H. 885, 888, 424 A.2d 207, 209 (1980). In the present case, however, neither the provisions of the town charter nor the form of town government are at issue. Accordingly, the "home rule" claims advanced by the plaintiffs are without constitutional underpinnings.

Indeed we have, in a previous case involving a challenge to the racing statute, by the Town of Seabrook, held that "[t]he legislature has plenary control over horse racing and dog racing. . . . It may grant local option to the municipalities, or deny it altogether, or

grant it on condition." *Seabrook v. Perkins*, 112 N.H. 37, 39–40, 288 A.2d 688, 690 (1972) (citations omitted). The State legislature, which in 1971 gave the towns local option on Sunday greyhound racing, could therefore lawfully take it away in 1981.

The plaintiffs also raise an equal protection challenge to the 1981 statute, claiming that the legislation invidiously discriminates between towns which have allowed horse racing and towns which permit greyhound racing. Because, for the reasons noted above, neither the town nor its citizens have a fundamental or constitutional right to control racing, and the statute does not involve a suspect class, the scrutiny to which this legislation must be subjected is simply whether there is a rational relationship between the purpose of the statute and the classifications it makes. *Estate of Cargill v. City of Rochester*, 119 N.H. 661, 667, 406 A.2d 704, 707 (1979), *appeal dismissed*, 445 U.S. 921 (1980).

The statute applies to all greyhound licenses, and we perceive no reason why the legislature cannot rationally distinguish between greyhound and other types of racing. The justices of this court have stated previously that legislative distinctions between different types of horse and dog races within the racing statutes are neither arbitrary, nor without just reason. *Opinion of the Justices*, 116 N.H. 351, 357, 358 A.2d 667, 672 (1976).

The plaintiffs' argument that the 1981 legislation constituted a retrospective law, in violation of part I, article 23 of the New Hampshire Constitution, is also without merit. Article 23 prohibits the State from enacting laws which disturb preexisting vested rights. *See Estate of Kennett v. State*, 115 N.H. 50, 53, 333 A.2d 452, 454 (1975). This constitutional prohibition, however, has no application where, as here for the reasons stated previously, the plaintiffs have no vested right of local option.

The plaintiffs also allege that the legislation was beyond the power of the legislature under part II, article 5 of the State Constitution to enact "wholesome and reasonable" laws. It is abundantly clear, however, that the legislature has broad powers to determine the conditions under which horse and greyhound racing will take place in this State. *Seabrook v. Perkins*, 112 N.H. at 39–40, 288 A.2d at 690.

Finally, the plaintiffs suggest that because the 1981 amendment eliminating local option for Sunday racing was adopted as a "footnote" to the operating budget, it was invalid for failure to comply with procedural due process standards. We find no merit to

this argument. The adoption of legislation by "footnote" has on occasion attracted public criticism. Nevertheless, subject to certain constitutional provisions such as the quorum requirements of part II, articles 20 and 37, which are inapplicable here, it remains for the legislature to establish the rules and procedures applicable to the legislative process. *See* N.H. CONST. pt. II, arts. 22 and 37; *see, e.g.*, Amend. 9 to Rules of the Senate, N.H.S. JOUR. 42 (1983). In our opinion, there are no independent procedural requirements under the due process clauses of either the United States or New Hampshire Constitutions affecting the validity of the legislative process employed in the adoption of the questioned statute. Accordingly, the remedy for those who feel aggrieved by either the statute or the procedures employed by the legislature in its adoption is at the ballot box, not in the courts.

For the foregoing reasons, the order of the superior court dismissing the plaintiffs' suit is affirmed.

*Affirmed.*

All concurred.