NORTH SHORE CORPORATION *vs.* SELECTMEN OF TOPSFIELD.

Suffolk.   December 4, 1947. — February 25, 1948.

Present: QUA, C.J., LUMMUS, DOLAN, & SPALDING, JJ.

*Racing. Municipal Corporations*, Officers and agents. *Certiorari. Words*, "Once approved."

A correct ruling by the trial judge in a certiorari proceeding was sustained without determination of the propriety of the reason therefor stated by him.

After the selectmen of a town in a county where a majority of the registered voters, pursuant to G. L. (Ter. Ed.) c. 128A, § 14, as amended, had voted in favor of permitting the pari-mutuel system of betting on licensed horse racing, had "once approved" the location of a race track in the town following notice and hearing and in compliance with § 13A, added to c. 128A by St. 1935, c. 454, § 8, and amended, the

jurisdiction of the selectmen was exhausted, and subsequent votes by them purporting to rescind such approval were of no effect.

One, who had procured an option giving him a right to obtain a lease of racing facilities at a certain location in a town, had procured approval of the location by the selectmen, and had made application to the State racing commission for a license, had an interest entitling him to maintain a certiorari proceeding to have declared invalid subsequent votes of the selectmen purporting to rescind the approval.

PETITION, filed in the Supreme Judicial Court for the county of Suffolk on March 28, 1947, for a writ of certiorari.

The case was transferred to the Superior Court and was heard by *Cabot,* J.

*S. L. Raymond,* (*J. J. Sullivan* with him,) for the respondents.

*J. B. Harrington,* for the petitioner.

SPALDING, J.  This is a petition for a writ of certiorari against the members of the board of selectmen of the town of Topsfield, hereinafter called the respondents, to quash their votes of March 7 and 10, 1947, which purported to rescind a vote of January 25, 1947, approving in accordance with G. L. (Ter. Ed.) c. 128A, § 13A, as amended, the location of a race track for horse racing.  The respondents filed a return, and the case was heard upon the petition and the return and upon oral evidence as to (1) what interest, if any, the petitioner had in the premises in question on January 25, and March 7 and 10, 1947, and (2) what action, if any, the petitioner had taken in reliance on the vote of January 25.  The judge ordered judgment to be entered quashing the respondents' votes of March 7 and March 10, 1947.  The respondents excepted to the order for judgment and to the refusal of the judge to grant certain of their requests for rulings.

Facts as to which there was no dispute and those appearing in the return are these:  The town of Topsfield is in a county in which at the last biennial election, pursuant to the provisions of G. L. (Ter. Ed.) c. 128A, § 14, as amended, the majority of the registered voters had voted in favor of permitting the pari-mutuel system of betting on licensed horse racing within the county.  Within the limits of the town is a piece of property known as the Topsfield Fair

Grounds which is owned by the Essex Agricultural Society of Topsfield, hereinafter called the society. On this property there is a race track which is suitable for horse racing. On April 15, 1946, the society granted to the petitioner an option for a lease of the race track for the purpose of conducting "harness horse racing."[1] On or about January 7, 1947, the petitioner requested the selectmen of Topsfield to approve, in accordance with G. L. (Ter. Ed.) c. 128A, § 13A, as amended, the Topsfield Fair Grounds as a suitable location for horse racing. After notice and hearing in compliance with § 13A, the selectmen on January 25 voted to "approve the location of the race track at the Topsfield Fair Grounds for harness horse racing meetings." Shortly thereafter an election was held in the town of Topsfield, and one of the selectmen who had voted in favor of approving the location of the race track was defeated and another was elected in his place. On March 7, 1947, a special meeting of the new board was held and a majority of the respondents voted to rescind and revoke the vote of January 25, 1947.[2] The respondents also voted that the racing commission be notified of this action and that it be requested to cancel the hearing on the petitioner's application for a license which had been scheduled for March 14, 1947. These votes were ratified and confirmed by a majority of the respondents at a regular meeting held on March 10, 1947. No hearing or notice thereof was held or given prior to either vote.

The judge ruled that the votes of March 7 and 10, 1947, purporting to rescind the vote of January 25, were invalid. The respondents by exceptions to the refusal of the judge to grant certain of their requests have raised the issue of the correctness of this ruling.

We are of opinion that the ruling was right. The judge rested his ruling on the ground that the petitioner in reliance on the vote of January 25 had made substantial expendi-

---

[1] The option was for a period of twelve months and the lease to be granted was for a term of five years with a privilege of an extension for five years more.

[2] This majority was composed of the newly elected member and one who had opposed the action taken January 25. The third member abstained from voting.

tures and commitments. But in the view that we take of the case it is not necessary to decide what bearing, if any, this fact would have on the rights of the parties. As will presently appear, the votes of March 7 and March 10 were invalid for a more fundamental reason than that stated by the judge. If the ruling of the judge was right, the reason on which he rested it is of no materiality. *Weidman* v. *Weidman,* 274 Mass. 118, 125. *Bianco* v. *Lay,* 313 Mass. 444, 450.

At the time of the enactment of the statute (G. L. [Ter. Ed.] c. 128A, inserted by St. 1934, c. 374, § 3) authorizing and regulating horse and dog racing in the Commonwealth, G. L. (Ter. Ed.) c. 271, § 33, provided in part that "No land within a town shall be laid out or used as a race ground or trotting park without the previous consent of and location by the mayor and aldermen or selectmen, who may regulate and alter the terms and conditions under which the same shall be laid out, used or continued in use and may discontinue the same when in their judgment the public good so requires . . . ." Section 33 stems from, and is substantially the same as, St. 1856, c. 102, § 1. By c. 128A which authorized the licensing of horse and dog races on which the pari-mutuel system of betting was permitted, an important change was made in the laws relating to racing. Under the new statute the control and regulation of all racing where betting was permitted were granted to the newly created State racing commission. The Legislature, however, in enacting c. 128A did not amend or repeal § 33 of c. 271, and the jurisdiction of the local authorities under that section, therefore, conflicted with that granted to the racing commission. To resolve this difficulty the Legislature enacted St. 1935, c. 454, § 8, which added a new section (§ 13A) to c. 128A.[1] This section, as amended by St. 1939, c. 159, and St. 1941, c. 295, so far as here material, now reads as follows: "The provisions of section . . . thirty-three . . . of chapter two hundred and

---

[1] See also St. 1935, c. 471, § 2, which provided that no approval under G. L. (Ter. Ed.) c. 271, § 33, was necessary with respect to licenses which had been issued by the commission on or before July 1, 1935.

seventy-one . . . shall not apply to race tracks or racing meetings laid out and conducted by licensees under this chapter; except that no license shall be granted by the commission for a racing meeting in any city or town, except in connection with a state or county fair, unless the location of the race track where such meeting is to be held or conducted has been once approved by the mayor and aldermen or the selectmen as provided by said section thirty-three of said chapter two hundred and seventy-one, after a public hearing, seven days' notice of the time and place of which hearing shall have been given by posting in a conspicuous public place in such city or town and by publication in a newspaper published in such city or town, if there is any published therein, otherwise in a newspaper published in the county wherein such city or town is situated." We think that it is apparent that with respect to racing authorized by c. 128A the Legislature in enacting § 13A intended to take away from the cities and towns most of the authority which they formerly had possessed under § 33. Under the first clause of § 13A, § 33 was to have no application to "race tracks or racing meetings laid out and conducted by licensees" under c. 128A. The statute then went on to provide "that no license shall be granted by the commission for a racing meeting in any . . . town . . . unless the location of the race track where such meeting is to be held . . . has been *once approved* by . . . the selectmen" as provided in G. L. (Ter. Ed.) c. 271, § 33 (emphasis supplied). This made § 33 applicable but only in so far as it provided for the approval of the location of the track. Those portions of § 33 which gave to the selectmen the right to "regulate and alter the terms and conditions under which . . . [the race ground or trotting park] shall be laid out, used or continued in use" and provided that they "may discontinue the same when in their judgment the public good so requires" were no longer operative. We are of opinion that § 13A must be construed to mean that when the location of a race track has been "once approved" by the local authorities their jurisdiction is exhausted. Support for this conclusion may be found in the provisions

of c. 128A which govern the granting of licenses. See §§ 2, and 3, as amended. Under these sections one seeking a license must apply to the racing commission which, before it can grant a license, must hold a public hearing, after reasonable notice, in the city or town wherein the license is to be exercised. Inasmuch as no license can be granted by the commission until the location has been approved by the local authorities under § 13A, it is not likely that the commission would hold its hearing until such approval had been obtained. It is not reasonable to suppose that the Legislature intended that, once there had been an approval by the local authorities, they were to have the power to revoke their approval and thereby deprive the commission of its jurisdiction.

It remains to consider whether the petitioner is in a position to challenge the action of the respondents. It is the general rule that resort cannot be had to certiorari unless the action of the tribunal of which a review is sought has resulted in substantial injury or manifest injustice to the petitioner. *Byfield* v. *Newton,* 247 Mass. 46, 58. *Whitney* v. *Judge of the District Court of Northern Berkshire,* 271 Mass. 448, 459. *Morrison* v. *Selectmen of Weymouth,* 279 Mass. 486, 494–495. *Walsh* v. *District Court of Springfield,* 297 Mass. 472, 474. We are of opinion that on this record it could have been found that the action of the respondents in rescinding the vote of January 25 resulted in substantial injury to the petitioner. The petitioner sought a racing license under c. 128A and had procured an option from the society which gave it the right to obtain a lease of the racing facilities of the Topsfield Fair Grounds. To obtain a license two steps were necessary: (1) approval of the location of the track by the local authorities and (2) the issuance of a license by the racing commission. However, if the revocation of the vote of January 25 were to stand, the license could not be obtained because under § 13A the approval of the location by the local authorities was a condition precedent to the granting of the license. It is true that even if the location were approved the racing commission had "full discretion to refuse to grant . . .

[the] license" under G. L. (Ter. Ed.) c. 128A, § 11. Nevertheless we think the petitioner's interest in acquiring a license was such that it was entitled to invoke the remedy afforded by certiorari to remove an apparent barrier which, so long as it was thought to exist, might have the practical effect of causing the commission to refuse to exercise its jurisdiction. That the petitioner had no proprietary interest in the race track beyond its option would not preclude relief. We find nothing in c. 128A that requires that one at the time he seeks the approval of a location or applies for a license must have a proprietary interest in the premises where the license is to be exercised.

The conclusion we have reached is decisive of the case and makes it unnecessary to discuss the other questions argued by the respondents.

*Exceptions overruled.*