Richard Friedman & others[1] vs. Conservation
Commission of Edgartown & another.[2]

No. 02-P-1565.

Dukes. February 10, 2004. - November 29, 2004.

Present: Gelinas, Duffly, & Trainor, JJ.

*Practice, Civil,* Action in nature of certiorari, Parties, Standing. *Wetlands Protection Act. Zoning,* By-law, Wetlands.

Abutters of a parcel of land on which a third party proposed to begin a construction project did not, solely by virtue of their assumed status as abutters, have standing to maintain an action in the nature of certiorari in the Superior Court challenging the decision of the local conservation commission approving the project, and having failed to show that they suffered an injury different in nature or magnitude from that of the general public, their complaint was properly dismissed. [542-545]

Civil action commenced in the Superior Court Department on March 11, 2002.

The case was heard by *Richard F. Connon,* J., on motions for judgment on the pleadings.

*Donald K. Stern (Anthony A. Scibelli* with him) for the plaintiffs.

*Dalila Argaez Wendlandt* for the defendants.

Duffly, J. The plaintiffs abut a thirty-four acre parcel of land on Oyster Pond in Edgartown,[3] on which the trustee of Tarob

---

[1]Alex Friedman, Timothy Benoit, Theresa Benoit, Peter Hatt, Julie Hatt, Thomas Scott, Debra Scott, Albert A. White, Lisa M. White, Mark Smith, Melissa Vincent, Judith Norton, and Allen W. Norton.

[2]Michael D. Myerow, trustee of the Tarob Realty Trust.

[3]The plaintiffs assert that, whether as owners of land abutting the subject property or as owners of properties on Oyster Pond, they are abutters. For purposes of this appeal we treat all plaintiffs as abutters. Cf. *Murray* v. *Board of Appeals of Barnstable,* 22 Mass. App. Ct. 473, 476 n.7 (1986) (it was sufficient to permit an appeal from board's decision that only one of the plaintiffs was an aggrieved person).

Realty Trust (Tarob Trust) proposes to build a large residence. Tarob Trust filed a notice of intent pursuant to the Edgartown wetlands protection by-law regarding the project and, following extended public hearings, the Edgartown Conservation Commission (commission) granted an order of conditions. The plaintiffs brought this action in the nature of certiorari pursuant to G. L. c. 249, § 4, appealing, so far as is relevant here, that aspect of the commission's decision based on the town by-law.

The complaint filed in the Superior Court alleges that the commission should not have approved the project because Tarob Trust violated provisions of the town by-law by failing to meet its burden of showing that the project "will not harm wildlife and their habitats" or cause "the loss or disruption of natural and historic views and vistas." Acting on cross motions for judgment on the pleadings, a Superior Court judge ruled that the plaintiffs lacked standing and allowed the motion of the commission and Tarob Trust.[4]

*Background facts and proceedings.* On September 28, 2001, Tarob Trust submitted site and architectural plans for a 15,600 square foot vacation home, accessory buildings and facilities (boat house, pool house, pool, parking, driveway, and tennis court), and two "view channels" between the house and Oyster Pond, to be built for the benefit of Robert Levine on property adjacent to Oyster Pond. The commission made two site visits and conducted public hearings over four separate dates spanning a period of two months, in the course of which numerous submissions were accepted from several consultants concerning the ecological and archaeological impact of the project. During this process, Tarob Trust made numerous revisions to its plans — significantly reducing the size and location of the main house, decreasing lawn size, relocating one of the two view channels — which ultimately met with the approval of the commission.

The commission's order consisted of two separate approvals:

---

[4]The judge also ruled that, in any event, under certiorari review, the plaintiffs had failed to show that the commission had violated applicable legal standards, concluding that the commission had not acted arbitrarily or capriciously and that the plaintiffs had not shown that the commission's order resulted in substantial injury or manifest injustice to them.

(1) an order issued pursuant to the State Wetlands Protection Act (act), G. L. c. 131, § 40; and (2) an order issued under the local Edgartown wetlands protection by-law and accompanying regulations. All portions of the project within 300 feet of Oyster Pond were subject to the commission's review under the town by-law, a broader geographical reach than under the act. In addition, the order of conditions set forth a number of special conditions that focus on mitigating and restricting the project's potential impact on wildlife habitats and historic views and vistas.

The plaintiffs, at least some of whom own or reside on property that directly abuts either the subject site or Oyster Pond, brought parallel challenges to the order of conditions, first filing an administrative appeal (from the State aspects of the order) with the Department of Environmental Protection (DEP), as provided by G. L. c. 131, § 40. The defendants, in their brief filed in this appeal, inform us that pursuant to that appeal, "the DEP issued a Superseding Determination of Applicability, authorizing the proposed work to proceed within areas subject to regulation under the Wetlands Act." Review of this determination (if any) is not before us. Compare, e.g., *Wilczewski* v. *Commissioner of Dept. of Envtl. Quality Engr.*, 404 Mass. 787, 792 (1989). Second, the plaintiffs brought the underlying action in Superior Court seeking to overturn that aspect of the commission's decision based solely on the town by-law.

In the matter that is the subject of our review, the plaintiffs express concern that the order of conditions permits extensive landscaping and alterations to the property, which they describe as "pristine and undeveloped land." They allege that the property is a "priority habitat of rare species" of wildlife (eastern box turtles) and vegetation (the Nantucket shadbush), and challenge the contrary report of Tarob Trust's environmental consultants presented at hearings before the commission.

The Superior Court judge denied the plaintiffs' motion for judgment on the pleadings and allowed that of Tarob Trust, in essence ruling that the plaintiffs lacked standing because they failed to make a showing of necessary harm that is prerequisite

to obtaining certiorari review.[5] Although by a somewhat different path, we reach the same result as that of the Superior Court judge and will affirm.

*Discussion.* An action in the nature of certiorari serves to correct errors of law in administrative proceedings where judicial oversight is not otherwise available. *Yerardi's Moody St. Restaurant & Lounge, Inc.* v. *Selectmen of Randolph*, 19 Mass. App. Ct. 296, 300 (1985), and cases cited. Compare *Rosenfeld* v. *Board of Health of Chilmark*, 27 Mass. App. Ct. 621, 626 (1989) (affirming dismissal of counts pursuant to G. L. c. 249, § 4, "because an action in the nature of certiorari lies only where there is no other available remedy"). Generally speaking, a complaint in the nature of certiorari is, in the absence of a procedure described by statute, the appropriate avenue of judicial review from a discretionary decision of a local licensing authority. *Ballarin, Inc.* v. *Licensing Bd. of Boston*, 49 Mass. App. Ct. 506, 510 (2000). More specifically, our decisional law has established that an action in the nature of certiorari is the appropriate means of review by applicants dissatisfied with a local conservation commission's order, under a local wetlands by-law, that prevents or restricts building on the applicants' land. See, e.g., *Lovequist* v. *Conservation Commn. of Dennis*, 379 Mass. 7, 16 (1979) (appeal from local conservation commission's order denying an order of conditions authorizing proposed construction on applicants' land); *Fafard* v. *Conservation Commn. of Reading*, 41 Mass. App. Ct. 565, 565 (1996); *FIC Homes of Blackstone, Inc.* v. *Conservation Commn. of Blackstone*, 41 Mass. App. Ct. 681, 684 (1996). See also *Balcam* v. *Hingham*, 41 Mass. App. Ct. 260, 264 (1996) (landowners denied a waiver from setback requirements of a wetlands by-law by the local conservation commission may seek judicial review via action in nature of certiorari). Although in each of the foregoing cases, judicial review was sought by an applicant landowner dissatisfied with the decision of the commission and

---

[5]To obtain a right of review under G. L. c. 249, § 4, "[t]he complaining party must show, '(1) a judicial or quasi judicial proceeding; (2) a lack of all other reasonably adequate remedies; and (3) a substantial injury or injustice arising from the proceeding under review.' *Boston Edison Co.* v. *Selectmen of Concord*, 355 Mass. 79, 83 (1968)." *Brienzo* v. *Massachusetts Commn. Against Discrimination*, 60 Mass. App. Ct 917, 918 (2004).

not by an abutter, we think that certiorari review may also be available to persons, including abutters, who can establish that they suffered injury to a protected legal interest. Cf. *Bermant* v. *Selectman of Belchertown*, 425 Mass. 400, 403-404 (1997); *Fabiano* v. *Boston Redev. Authy.* 49 Mass. App. Ct. 66, 68-70 & n.8 (2000). However, we are not persuaded that the plaintiffs have made the requisite showing here.

The plaintiffs claim that, as residents and owners of land that fronts Oyster Pond, they have standing as abutters within the regulatory framework applicable to review of the commission's order under the act and that, by analogy, they should also be accorded automatic standing when seeking review in the nature of certiorari. Regulations governing review to the DEP are part of the regulatory framework promulgated by the DEP to effectuate the act, and are contained in 310 Code Mass. Regs. §§ 10.01 et seq. (1997). These regulations confer standing to appeal to the DEP to "any owner of land abutting the land on which the work is to be done," 310 Code Mass. Regs. § 10.05(7)(a)(4) (1997), and further define such an "owner of land" to include owners of "land located directly across a street, way, creek, river, stream, brook or canal." 310 Code Mass. Regs. § 10.04 (1997). As the plaintiffs concede, however, "these regulations apply to the DEP administrative challenges and appeals," and we decline to import them wholesale for application to claims of standing in the separate context of certiorari review of orders of conditions issued pursuant to a town wetlands protection by-law.

We disagree with the plaintiffs that standing is to be conferred solely by virtue of their assumed status as abutters and conclude that, having failed to show that they have suffered an injury different in nature or magnitude from that of the general public, the complaint was properly dismissed on the basis that the plaintiffs lack standing.[6]

Our conclusion rests in part on our observation that, in

---

[6]Accordingly, while the merits are intertwined to some degree with the standing question, we do not reach the substantive issues presented. Were we to reach those issues, we would affirm based on a conclusion that the commission's decision was supported by substantial evidence and that any deficiencies in the applicant's submission was met by the order of conditions, which conditions were not arbitrary and capricious. To the extent the plaintiffs also

comparable settings, requirements for abutters seeking to establish and retain standing are formidable. See, e.g., *Enos* v. *Secretary of Envtl. Affairs*, 432 Mass. 132, 134-143 (2000) (G. L. c. 231A and G. L. c. 30, §§ 61-62H, the Massachusetts Environmental Protection Act [MEPA]). Considerations identified as relevant to determining standing to challenge, as violative of the MEPA, the issuance of a permit by the DEP, see *Enos* v. *Secretary of Envtl. Affairs, supra* at 135-136, offer guidance here. In that case, the court was asked to consider the question of standing of fourteen property owners who brought a complaint seeking a declaratory judgment, pursuant to G. L. c. 231A, that certificates of compliance permitting construction of a town sewage treatment plant were invalid. In that context, the Supreme Judicial Court said: "[W]e must decide whether standing exists by examining several considerations, including the language of the statute in issue; the Legislature's intent and purpose in enacting the statute; the nature of the administrative scheme; decisions on standing; any adverse effects that might occur if standing is recognized; and the availability of other, more definite, remedies to the plaintiffs. In making our inquiry, we pay special attention to the requirement that standing usually is not present unless the governmental official or agency can be found to owe a duty directly to the plaintiffs." *Enos* v. *Secretary of Envtl. Affairs, supra.*

The analysis in *Enos, supra* at 134-143, supports a similar result here. As in *Enos,* the by-law at issue "establishes a process . . . for thorough consideration of the potential environmental impact of certain projects." *Id.* at 136. In addition, the by-law "contemplates that persons such as the plaintiffs may play a role in the process, by submitting written comments or participating in any public or informational hearings that, by regulation, may be held." *Id.* at 137-138. Also as in *Enos,* that persons such as the plaintiffs are allowed to participate in the process does not equate with standing to carry a challenge of the ultimate administrative decision into the judicial arena. See

complain of open meeting law violations, such a complaint was not timely and is not properly before us. Finally, the decision not to refer the project to the Martha's Vineyard Commission has not been shown to be arbitrary or capricious.

*id.* at 138. See also *Ginther* v. *Commissioner of Ins.*, 427 Mass. 319, 324 (1998). Finally, a holding that the plaintiffs have automatic standing would greatly expand the remedy of certiorari. Compare *Enos, supra* at 141-142.

While the subject of standing was not explicitly discussed in *Fiske* v. *Selectmen of Hopkinton*, 354 Mass. 269, 271 (1968), where the action purported to be in the nature of certiorari, the issues there are comparable and the case instructive. In that case the court said, "It is the general rule that resort cannot be had to certiorari unless the action of the tribunal of which a review is sought has resulted in substantial injury or manifest injustice to the petitioner." The court then ruled that the case before it was properly dismissed: "[T]he allegations are speculative and the damage alleged is generalized. The petitioners allege that their properties abut . . . [the land on which the work is to be done]. But it does not appear from the petition . . . how they are substantially injured beyond the hypothetical injuries to the town . . . as a whole." *Fiske, supra* at 271. Similarly, in the case before us, the plaintiffs have failed to claim, much less show, that the action they sought to have reviewed resulted in "substantial injury" or "manifest injustice" to them, rather than to the public in general.[7] Compare *Ginther* v. *Commissioner of Ins.*, 427 Mass. at 322 ("To qualify as a 'person aggrieved,' a person must allege substantial injury as the direct result of the action complained of"); *Enos* v. *Secretary of Envtl. Affairs*, 432 Mass. at 135 (to establish standing a party must allege significant injury occurring within the area of concern of the regulatory scheme). It is not evident from the complaint, nor from the extensive record with which we have been provided, that the plaintiffs will suffer injuries separate from the town as a whole.

The motion to dismiss the plaintiffs' complaint was properly allowed.

*Judgment affirmed.*

---

[7]The complaint in this case alleges only that "[t]he plaintiffs have been adversely and materially affected by the [d]ecision."