Connon, Richard F., J.
INTRODUCTION
The plaintiffs filed a complaint against the defendants in the nature of certiorari under G.L.c. 249, §4. This matter is before the court on the plaintiffs’ motion for judgment on the pleadings pursuant to Mass.R.Civ.P. 12(c). In opposing the motion, the Defendant Community Housing Resources, Inc. (“CHR”) has requested that plaintiffs’ complaint be dismissed on the grounds that they have no legal standing to bring this action. The Defendant Town of Wellfleet Conservation Commission (“the Commission”) has assented to CHR’s opposition.
Prior to the hearing on February 10, 2009, the plaintiffs filed an emergency motion to supplement the administrative record with an affidavit from David C. Bennett on the issue of standing, which the defendants opposed. The entire matter was heard on February 10, 2009. For the reasons set forth below, the plaintiffs’ emergency motion to supplement the administrative record is DENIED, and the plaintiffs’ motion for judgment on the pleadings is DENIED.

BACKGROUND

On May 17, 2007, East Cape Engineering, Inc. (“East Cape”) on behalf of CHR filed a Notice of Intent *584 (“NOI”) with the Commission, seeking to construct a driveway and drainage in the first fifty feet of the 100-foot buffer zone of a Bordering Vegetated Wetland, for proposed affordable residential dwellings outside of the buffer zone. The property is located at 120 Paine Hollow Road in Wellfleet, and owned by the Town of Wellfleet/Wellfleet Housing Authority. In the buffer zone of the Bordering Vegetated Wetland, there exists saturated/inundated conditions and indicators of groundwater, all of which were determined by direct observations. CHR limited the scope of the project to two acres in a site just under five acres (4.96 acres), with the work in the buffer zone limited to 3,400 square feet. Regarding proximity to the project, the Bordering Vegetated Wetland is on the opposite side of Paine Hollow Road. The only access available to the project site was Paine Hollow Road. Since the proposed project is located in an estimated habitat of rare wildlife, notice was sent to the National Heritage & Endangered Species Program Division of Fisheries & Wildlife as required.
East Cape presented a project design for the driveway and drainage where new stormwater point discharges would not discharge untreated stormwater into, or cause erosion to, wetlands and waters. Stormwater controls were designed for the two-year, ten-year, twenty-four-hour storm, and the project as designed would not increase off-site flooding impacts from the 100-year, twenty-four-hour storm.
The first meeting before the Commission was on June 6, 2007. At that meeting East Cape provided an overview of the project, stating there were seven separate housing units proposed to be constructed outside of the buffer zone. The proposed driveway would provide access to the housing units, and be paved with two catch basins at the base and a catch basin located on Paine Hollow Road.- The project would have a total of eleven bedrooms. Attorney Hoff, the attorney for the plaintiffs, was unable to attend the meeting, but sent a letter which the Commission read during the meeting. The plaintiffs were identified as “Concerned Citizens of Paine Hollow,” a group of abutters and persons living in close proximity to the project. The letter for the most part requested the NOI be repealed because CHR had failed to provide necessary supporting information, and failed to secure all necessary local and state approval, which was required prior to the filing of the NOI. The primary concerns of the Concerned Citizens was that the site of the project had an extremely steep grade above Paine Hollow Road potentially subjecting the wetland resource area below the Road to adverse impacts from stormwater runoff, and that the water withdrawals for the project would affect water supply wells for residents now living in the area. Additionally, the letter stated that the extreme grade and location of the proposed driveway presented significant issues regarding line-of-sight, and stopping and access during extreme weather conditions.
The meeting was continued to June 20, 2007 so that East Cape could respond to the concerns expressed in Attorney Hoffs letter. At the meeting on June 20, 2007, the matter was further continued upon the request of CHR to July 18, 2007. In between these dates, the Commission received a letter from the Division of Fisheries & Wildlife, dated June 20, 2007, stating the conclusion that the project as proposed would neither “adversely affect the actual Resource Area of state-protected rare wildlife species,” nor result in a prohibited “take” of state-listed rare species.
At the meeting on July 18, 2007, an Agent for the Commission reminded the parties that the Commission was only addressing the construction of the driveway and the associated water issues. The Agent also noted that water quality issues might be better addressed by the Board of Health, asserting that additional restrictions could be put on the property for additional wells. CHR suggested utilizing salt hay bales on the opposite side of Paine Hollow Road to further address stormwater concerns, and provided more detailed information regarding the scope of the project and possible alternatives. CHR stated that monitoring wells were installed and water testing performed which resulted in no impact on the groundwater on the abutters’ property, and the test results were thereby acceptable.
David C. Bennett from Bennett & O’Reilly (“Bennett”), representing the plaintiffs as an engineering consultant, expressed concerns regarding stormwater drainage and the abutters’ private wells going dry due to water withdrawals for the project. One abutter argued for cutting trees to perform additional water tests. Upon the request of CHR, the meeting was continued so that further tests could be done. The next meeting was scheduled on August 15, 2007.
On August 15, 2007, there was a discussion regarding alternate well sites. CHR reported that there was only one adequate well site for the project, but water storage tanks would be provided in each building to hold one day’s worth of water (110 gallons per day per bedroom). Abutters again expressed concerns about their wells. The tests conducted by East Cape indicated that the proposed well at the project site should have no impact on water thirty feet away. Bennett acknowledged his approval of the plan and belief that storage capacity would provide a solution to the water quantity issue. On a motion made and seconded, the Commission approved the project to construct a driveway and drainage in the buffer zone with conditions, including general conditions pursuant to the Wellfleet Environmental Protection By-Law and two letters submitted by East Cape. The vote was five to zero with all commissioners present voting for approval.
On August 22, 2007, the Commission issued the order of conditions with all five commissioners signing. On September 11, 2007, the plaintiffs requested that the Commission reconsider its decision, claiming *585 there were still concerns for the adequacy of the project’s water supply. The plaintiffs also identified some technical claims on how the Form 5 Order of Conditions was not prepared correctly due to the absence of required findings. The plaintiffs further contended that a variance was required under the Wellfleet Environmental Protection By-Law.
On September 19, 2007, the Commission voted to amend the order of conditions to incorporate a letter dated August 15, 2007 from East Cape, on behalf of CHR, regarding water storage to address the water supply issue. On September 20, 2007, the Commission issued an amended order of conditions. In doing so, the Commission used the original order of conditions issued on August 22, 2007 and inserted the date September 20, 2007. The Commission also checked off boxes in Section B “Findings,” which previously had not been checked off, thereby finding that the proposed work was significant to the nine interests of the Wetlands Protection Act, G.L.c. 131, §40. In addition, under Buffer Zone Impacts paragraph three was checked off and the figure thirty-eight feet inserted to show the shortest distance between the limit of the project disturbance and the wetland boundary. The Commission also recognized in Section D “Findings Under Municipal Wetlands Bylaw or Ordinance” that Wellfleet’s Environmental Protection By-Law was applicable, which required additional conditions for compliance.

DISCUSSION

Under G.L.c. 249, §4, a parly can bring “[a] civil action in the nature of certiorari to correct errors in proceedings which are not according to the course of the common law, which proceedings are not otherwise reviewable by motion or by appeal.” “The requisite elements for availability of certiorari are (1) a judicial or quasi judicial proceeding (2) from which there is no other reasonably adequate remedy (3) to correct substantial error of law apparent on the record (4) that has resulted in manifest injustice to the plaintiff or an adverse impact on the real interests of the general public.” State Bd. of Retirement v. Woodward, 446 Mass. 698, 703-04 (2006) (internal citations omitted).
As a preliminary matter, CHR argues this action should be dismissed because the plaintiffs do not have legal standing, relying on Friedman v. Conservation Comm’n of Edgartown, 62 Mass.App.Ct. 539 (2004). CHR’s position is that the plaintiffs allege generalized and speculative injuries, which are insufficient to establish legal standing.
“It is the general rule that resort cannot be had to certiorari unless the action of the tribunal of which a review is sought has resulted in substantial injury or manifest injustice to the petitioner." Fiske v. Board of Selectmen of Hopkinton, 354 Mass. 269, 271 (1968), quoting North Shore Corp. v. Selectmen of Topsfield, 322 Mass. 413, 418 (1948). This standard for legal standing is not satisfied when the “allegations are speculative and the damage alleged is generalized.” Id. Specifically, abutters have a “formidable” task in establishing legal standing, as they must show “that they have suffered an injury different in nature or magnitude from that of the general public.” Friedman, 62 Mass.App.Ct. at 543-44. In fact, “standing usually is not present unless the governmental official or agency can be found to owe a duly directly to the plaintiffs." Id. at 544, quoting Enos v. Secretary of Envtl. Affairs, 432 Mass. 132, 136 (2000).
In the complaint, the plaintiffs’ alleged injuries consist of the project’s impact on an environmentally-sensitive area abutting wetlands and other important resource areas, the Commission’s “flagrant violation” of Wellfleet’s Environmental Protection By-Law and Environmental Protection Regulations, and concern that the project will affect their source of drinking water because they rely on private wells in an area with limited capacity.
The court concludes that the plaintiffs’ allegations are insufficient to establish legal standing. The first two alleged injuries are insufficient because they are neither different in magnitude nor nature from that suffered by the general public. Under these two allegations, the general public would be injured by any hypothetical harm to the environment from the Commission’s failure to apply the local environmental protection by-law and regulations. See Friedman, 62 Mass.App.Ct. at 541-42 (no standing when plaintiffs were concerned with the Commission allowing landscaping and alterations to property alleged to be “pristine and undeveloped land” with a “priority habitat of rare species” of wildlife and vegetation). While the allegations regarding water supply directly affect the plaintiffs, these allegations are purely speculative and thereby insufficient to establish legal standing. See Higby/Fulton Vineyard LLC v. Board of Health of Tisbury, 70 Mass.App.Ct. 848, 852 (2007) (no standing when plaintiff only made a speculative showing of harm). The record indicates that CHR’s plan for water storage addressed the plaintiffs’ concerns. Moreover, the record indicates that Bennett, a representative of the plaintiffs, failed to present a technical critique before the Commission that demonstrated likely harm resulting from the project, and he actually expressed his belief that water storage would be a solution.[3] Consequently, based on the evidence in the record, any water shortage resulting from the project is purely speculative and hypothetical. Therefore, the plaintiffs have failed to establish that they suffered substantial injury or manifest injustice.
The plaintiffs had also sought to file an affidavit from Bennett on the issue of standing days prior to the hearing before this court. The court declines to add the affidavit to the record because the emergency motion was not filed timely under Superior Court Rule *586 9A(b)(2). The plaintiffs filed their motion for judgment on the pleadings with the Rule 9A packet on September 16, 2008. While it has been established that there is no automatic standing for abutters, see Friedman, 62 Mass.App.Ct. at 543, the plaintiffs did not seek to address the standing issue with additional evidence until February 6, 2009, just four days prior to the hearing scheduled on February 10, 2009. Under Superior Court Rule 9A(b)(6), however, “the court need not consider any motion or opposition that fails to comply with the requirements of this rule.”
Assuming arguendo that the plaintiffs have legal standing, the court concludes the Commission’s decision was neither arbitrary nor capricious. “[A] court that undertakes certiorari review ‘is bound to determine, upon an inspection of the whole record, whether the proceedings are legal or erroneous.’ ” State Bd. of Retirement v. Woodward, 446 Mass. at 704, quoting Farmington River Water Power Co. v. County Comm’rs, 112 Mass. 206, 214 (1873). The standard of review, however, depends upon the nature of the underlying action. See Chandler v. County Comm’rs of Nantucket County, 437 Mass. 430, 434 (2002), and cases cited. Courts reviewing decisions of local conservation commissions have applied the arbitrary and capricious standard. See Fafard v. Conservation Comm’n of Reading, 41 Mass.App.Ct. 565, 567-68 (1996); T.D.J. Dev. Corp. v. Conservation Comm’n of North Andover, 36 Mass.App.Ct. 124, 128 (1994). “A decision is not arbitrary and capricious unless there is no ground which ‘reasonable men might deem proper’ to support it.” T.D.J. Dev. Corp., 36 Mass.App.Ct. at 129, citing Cotter v. Chelsea, 329 Mass. 314, 318 (1953).
Here, the Commission held three public hearings on the project and accepted numerous submissions from the interested parties. The record reflects that CHR’s plan provided for constructing driveway access and drainage in a buffer zone for housing units, which would be constructed outside of the buffer zone. The record reflects that the proposed stormwater management system would address concerns with stormwater run off, and tests revealed that water withdrawals for the project would not affect the plaintiffs’ water supply. Furthermore, the record indicates that the water storage system would be a solution to the water quantity issue. The plaintiffs point to the changes made to the order of conditions and argue the amended order of conditions is unlawful. The Commission, however, has authority to make minor changes to an order of conditions, which would presumably apply to checking off boxes to reflect required findings or adding an intended condition that had been omitted. See Department of Environmental Protection’s Wetlands Program Policy #84-5 (1995) (allowing the Commission to correct obvious mistakes in an order of condition). As alleged, the changes made in the amended order of conditions neither addressed new issues nor broadened the project’s scope. See id.
While the plaintiffs have maintained that a variance was required, Section 2.02(4)(c) of the Wellfleet Environmental Protection Regulations does not per se prohibit work in the buffer zone. In fact, the Regulation allows the Commission to permit work in the buffer zone if the applicant examined all practical alternatives that would minimize any impact, and demonstrates any impact will be adequately mitigated. See also Section 2.02 (4) (d)(1) (a) (allowing alteration of up to 5,000 square feet in the buffer zone subject to express conditions). Since the Commission held multiple hearings and considered the evidence on alternatives and mitigation, the court cannot conclude the Commission acted arbitrarily and capriciously.
Furthermore, even if the Commission made errors of law in amending the order of conditions, the alleged errors were technical in a procedural nature rather than affecting substantive rights, and could thereby not be remedied in an action for certiorari because the court only has authority to correct substantial errors of law. See Cumberland Farms, Inc. v. Planning Bd. Of Bourne, 56 Mass.App.Ct. 605, 607 (2002), quoting Massachusetts Prisoners Ass’n Political Action Comm. v. Acting Governor, 435 Mass. 811, 824 (2002) (“The court’s power on certiorari is not exercised to remedy mere technical errors that have not resulted in manifested injustice”).[4]

ORDER

For the foregoing reasons, it is hereby ORDERED that the plaintiffs’ Emergency Motion to Supplement the Administrative Record be DENIED, and the plaintiffs’ Motion for Judgment on the Pleadings be DENIED.

While the plaintiffs now contend Bennett neither approved the plan nor agreed that water storage would be a solution, the court’s review is limited to the record where the minutes of the August 15,2007 meeting indicate that Bennett did make such statements.

The plaintiffs had argued that the amended order of conditions derived from private action that violates the Open Meeting Law. The court need not address this argument, however, because G.L.c. 39, §23B expressly provides a statute of limitations, where a petitioner has twenty-one days from the date the challenged action is made public to invalidate such action. Here, the complaint was filed on October 19, 2007, which was more than twenty-one days after the Commission’s action on September 19, 2007, when the Commission voted to amend the order of conditions in a public meeting.