NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-3

RESI, LLC

vs.

CONSERVATION COMMISSION OF WAREHAM.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, RESI, LLC, appeals from a Superior Court judgment dismissing its certiorari complaint and allowing a judgment on the pleadings in favor of the defendant, the Conservation Commission of Wareham (commission).  The plaintiff argues that in denying it permission to build a pier, the commission did not in fact rely on the town's wetland protective bylaw (bylaw), and alternatively that the commission's decision was arbitrary and capricious and unsupported by substantial evidence.  We affirm.

Background.  In August 2022, the plaintiff filed with the commission a notice of intent seeking approval to construct a pier (including a float system, two boat lifts, and a ramp) to

service the potential residents of a seven lot subdivision in Wareham (project site or pier).  The commission referred the matter for comment to the Department of Marine Fisheries (DMF) and the town's shellfish constable.  The DMF responded that the project site "lies adjacent to mapped shellfish habitat for northern quahog . . . , bay scallop . . . , and soft-shell clam," and in June 2022 quahogs were found within the project site.  The shellfish constable responded that the project site was within an area that is used year round for both commercial and recreational shellfishing.  Nineteen town residents signed a letter objecting to issuance of the permit, pointing out, among other things, that the project site was in or near a protected shellfish area and the plaintiff had failed to specify "the proposed number, type and style of the proposed watercraft to be used at the site," art. I, § XVI(C)(6) of the bylaw.  After a public hearing, the commission denied the plaintiff's application, relying in its decision on art. I, §§ III, VII(2), and XVI(C)(9) of the bylaw.[1]

The plaintiff filed this action for certiorari, arguing that the commission's decision did not adequately explain how

---

[1] The commission's decision cited art. I, § "VI(2)" of the bylaw.  The plaintiff infers, and we concur, that was a typographical error for bylaw § VII(2).  In addition, the definition of "significant shellfish habitat" relied upon by the commission appears in art. I, § III (not § VII).

the bylaw applied to these facts and was arbitrary, capricious, unsupported by the evidence, and contrary to law.  From the Department of Environmental Protection (DEP), the plaintiff sought a superseding order of conditions pursuant to the Wetlands Protection Act (act), G. L. c. 131, § 40, nineteenth par., and 310 Code Mass. Regs. § 10.05(7)(c) (2014).  On April 7, 2023, the DEP issued a superseding order of conditions opining that "the project as proposed . . . adequately protects the interests of the . . . [a]ct.  However, the project will need to obtain approval under the local Wareham bylaw prior to commencing work."

The parties filed cross motions for judgment on the pleadings.  The judge concluded that the commission relied on sections of the bylaw that empower it to consider the cumulative effects of the project on shellfish and shellfish habitat, which the judge interpreted to permit it to consider the effects on the area adjacent to the pier, particularly because the plaintiff had failed to provide information about the proposed number and size of boats that would use the pier.  Judgment entered, and the plaintiff appealed.

Discussion.  We review de novo the allowance of a motion for judgment on the pleadings.  See Boston v. Conservation Comm'n of Quincy, 490 Mass. 342, 345 (2022) (Boston).  A civil action for certiorari pursuant to G. L. c. 249, § 4, "is the

3

appropriate means of review" for the plaintiff to seek judicial review of the commission's decision. Boston, supra at 344, quoting Friedman v. Conservation Comm'n of Edgartown, 62 Mass. App. Ct. 539, 542 (2004). Even so, we keep in mind that certiorari "is a limited procedure reserved for correction of substantial errors of law apparent on the record created before a judicial or quasi judicial tribunal" (quotation and citation omitted). Cumberland Farms, Inc. v. Board of Health of Braintree, 495 Mass. 225, 231 (2025). "[W]here a conservation commission 'rests its determination on provisions of a local bylaw that are more protective than the act[,] . . . a superseding order of conditions issued by the DEP cannot preempt the conservation commission's bylaw-based determination.'" Boston, supra at 345, quoting Oyster Creek Preservation, Inc. v. Conservation Comm'n of Harwich, 449 Mass. 859, 865 (2007). In relying on a more stringent local bylaw, a local conservation commission must "explain how the bylaw . . . applies to the facts presented." Boston, supra at 346. It is not enough to "simply refer[] to" the bylaw; the commission must show "that it actually relied on [the bylaw and] how it did so . . . ." Id., quoting Oyster Creek Preservation, Inc., supra at 866 n.12.

1. Commission's reliance on bylaw. The plaintiff argues that the commission did not in fact rely on the bylaw, but instead "simply interpret[ed] wetland protections differently

4

from [the DEP]," and thus the commission's decision is preempted by the DEP's superseding order of conditions.  We disagree.  We conclude that in its decision the commission relied on the sections of the bylaw to which it cited, and which are more stringent than the DEP regulations.  Contrast Boston, 490 Mass. at 347 (commission's decision "did not rely on the local ordinance" but "cited . . . exclusively" to DEP regulations).

First, the commission relied on art. I, § XVI(C)(9) of the bylaw (bylaw § XVI[C][9]), pertaining to coastal structures, which provides:  "Shellfish habitat evaluation.  Piers shall not be allowed to be constructed within significant shellfish habitat as determined by the DMF and/or the Wareham Shellfish Constable.  The absence of shellfish may not mean that productive shellfish habitat does not exist."  Relying on that section, the commission found that "[t]he installation of the pier will result in the permanent loss of approximately 28 sq ft of Significant Shellfish Habitat . . . ."

The plaintiff argues that the commission's finding that there would be a loss of twenty-eight square feet of significant shellfish habitat did not in fact rely on bylaw § XVI(C)(9), but rather applied the less stringent DEP regulation, 310 Code Mass. Regs. § 10.34(2) (2014), which pertains to "Land Containing

5

Shellfish."[2]  The plaintiff points out that bylaw § XVI(C)(9) forbids building a pier "within significant shellfish habitat as determined by the DMF" (emphasis added), but the DMF found that the project site was only "adjacent to mapped shellfish habitat" (emphasis added).  Cf. Fafard v. Conservation Comm'n of Reading, 41 Mass. App. Ct. 565, 569-570 (1996) (by applying bylaw to buffer zone to which it did not directly apply, town violated principles of "uniformity of standards and enforcement").

However, the commission was also applying the second sentence of bylaw § XVI(C)(9), which provides that "[t]he absence of shellfish may not mean that productive shellfish habitat does not exist."  We read the commission's decision as interpreting both sentences of bylaw § XVI(C)(9) to empower it to deem the twenty-eight square foot area where the pier would be built as a significant shellfish habitat because it was adjacent to mapped shellfish habitat, quahogs had been found within it, and the shellfish constable had reported that it was used for commercial and recreational shellfishing.  We give

---

[2] Art. I, § III of the bylaw defines "significant shellfish habitat" to "include those areas of Lands Containing Shellfish designated and mapped as significant shellfish habitat for commercial or recreational use by the [DMF]."  The DEP regulations define "Land Containing Shellfish" as "land under the ocean . . . when any such land contains shellfish," defined to include the species that the DMF found adjacent to the project site.  310 Code Mass. Regs. § 10.34(2).

6

deference to the commission's reasonable interpretation of its bylaw. See Nelson v. Conservation Comm'n of Wayland, 90 Mass. App. Ct. 133, 134 (2016).

Second, the commission relied on art. I, bylaw § VII(2) (bylaw § VII[2]), which empowers it to consider "unacceptable significant or cumulative effects" on the resource area values protected by the bylaw, which include shellfish, land containing shellfish, and the recreational value of the area. The commission quoted the following language of that section:

> "The Commission is empowered to deny a permit for failure to meet the requirements of this bylaw; for failure to submit necessary information and plans requested by the Commission; . . . for failure to avoid or prevent unacceptable significant or cumulative effects upon the resource area values protected by this bylaw; and where no conditions are adequate to protect those values."

Bylaw § VII(2). In applying that section to the facts of this case, the commission permissibly considered not only the effect that the project would have on shellfish directly under the pier, but also the "unacceptable significant or cumulative effects" on the area adjacent to the pier.

Unlike the Quincy bylaw discussed in Boston, 490 Mass. at 348-349, and like the Attleboro bylaw discussed in Cave Corp. v. Conservation Comm'n of Attleboro, 91 Mass. App. Ct. 767, 773 (2017), the bylaw at issue here specified the cumulative effects the commission should consider. Indeed, art. I, bylaw § XVI(A) (bylaw § XVI[A]) describes in detail how "[t]he construction[,]

7

maintenance[,] and use of docks and piers are likely to have a significant or cumulative effect on the resource area values of . . . shellfish [and] shellfish habitat . . . ." It explains that "[t]urbulence and prop dredging generated by boat traffic around docks and piers significantly increases turbidity levels in surrounding waters," which impacts the oxygen level of the water and redistributes sediment, "smothering existing shellfish" and "hinder[ing] or prevent[ing] the effective settlement of shellfish larvae." Though the commission did not cite to bylaw § XVI(A), it did cite to and quote from § XVI(C)(9), as discussed above. In those circumstances, we interpret the commission's reliance on both §§ VII(2) and XVI(C)(9) in its decision as having been informed by the introductory subsection, § XVI(A), explaining the "significant or cumulative" effects that it could consider. Contrast Boston, supra (Quincy ordinance did not specify cumulative effects commission should consider).

Moreover, as noted by the objecting townspeople and the report of the commission's agent who visited the project site, bylaw § XVI(C)(6) required the plaintiff to provide the commission with information about the proposed number and size of boats that would use the pier. The plaintiff argues that the commission did not cite to that subsection of the bylaw, and the judge placed too much emphasis on the lack of information about

8

boats.  We are not persuaded.  Even if the judge's analysis did differ from that of the commission, that would not affect our de novo review of the commission's decision.  See S. Volpe & Co. v. Board of Appeals of Wareham, 4 Mass. App. Ct. 357, 359-360 (1976).

The commission found that "the unknown number of boats" adjacent to the pier would "result in additional loss of access to Shellfish Habitat and Shellfish directly."  We read that reference to the "unknown number of boats" as applying the portion of bylaw § VII(2) quoted by the commission that empowered it to deny a permit "for failure to submit necessary information and plans."  Contrary to the plaintiff's argument, where the plaintiff provided no information regarding the number or size of boats that would use the pier, it was not the commission's responsibility to propose conditions that would satisfy the bylaw.

We conclude that the DEP's superseding order of conditions did not preempt the commission from enforcing the town's more stringent bylaw.  The superseding order of conditions focused on the temporary impact that construction of the pier would have on the specific footprint of the pier.  In contrast, the commission's decision focused on the ongoing impact that the pier would have on the adjacent shellfish habitat, including the impact of boats coming to and from the pier.  Contrast Boston,

9

490 Mass. at 347 n.9 (commission's decisions "do not clearly express a concern with future impacts").

2. Certiorari review under G. L. c. 249, § 4. Alternatively, the plaintiff argues that the commission's decision was arbitrary and capricious, and unsupported by substantial evidence. "A decision is not arbitrary or capricious unless there is no ground which reasonable people might deem proper to support it"[;] [s]ubstantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion," based on the entire record, including any countervailing evidence (quotation and citations omitted). Cumberland Farms, Inc., 495 Mass. at 231. For the reasons discussed above, we conclude that the plaintiff has not shown that the commission's decision was either arbitrary or capricious, or that it was unsupported by substantial evidence. We discern no substantial error of law apparent on the record created before the commission. See id.

Judgment affirmed.

By the Court (Blake, C.J., Neyman & Grant, JJ.[3]),

Clerk

Entered: January 22, 2026.

---

[3] The panelists are listed in order of seniority.

10