NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-340

BRIAN COPPENRATH & another[1]

vs.

E.J. PONTIFF CRANBERRIES, INC., & another.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiffs, Brian and Kelsey Coppenrath, appeal from a judgment entered by a Superior Court judge that dismissed for lack of standing their complaint brought under the certiorari statute, G. L. c. 249, § 4.  The complaint alleged that the town of Carver's earth removal committee (ERC) improperly issued an earth removal permit (permit) to defendant E.J. Pontiff Cranberries, Inc. (Pontiff).[3]  The complaint also sought a declaratory judgment, pursuant to G. L. c. 231A, § 1,

---

[1] Kelsey Coppenrath.

[2] Earth removal committee of Carver.

[3] The ERC did not file a brief or otherwise participate in this appeal.

invalidating the permit. Primarily at issue on appeal is the third requirement for certiorari review -- whether the plaintiffs suffered a substantial injury or injustice to establish standing. See Indeck v. Clients' Sec. Bd., 450 Mass. 379, 385 (2008). We agree with the Superior Court judge and affirm.

Background. Pontiff is a cranberry grower that purchased the site at issue in 2023, although permits were issued since 2006 by the ERC to the prior owner that allowed earth removal for the purpose of constructing cranberry bogs. In 2022, the plaintiffs moved to a home that is considered an abutter to the site. After Pontiff applied for the permit, the ERC held three public hearings to consider the application as well as public comments. In 2024, the ERC granted the permit to Pontiff with conditions for the earth removal, including the hours of operation, truck routes, maximum number of trucks permitted per day, dust mitigation measures, and other safety precautions.

The plaintiffs filed a complaint in the Superior Court seeking judicial review of the permit, pursuant to G. L. c. 249, § 4. They claimed that the application was submitted as a "pretense [to] evade prohibitions against [commercial] sand and gravel mining." They contended that the application and permit failed to comply with the town's bylaws and that the ERC was improperly constituted.

2

As relevant here, the plaintiffs alleged that they suffered "[p]otential contamination of private wells"; "[a]irborne release of medically harmful silica"; "[d]eposit[s] on their properties of sand, gravel, and trash"; "[i]nfestation of predatory animals threatening pets and humans"; "[c]oncussive noise and vibration"; "[i]ncreased noise"; "[r]uination of natural vista"; and "[d]ecreased property values."

The defendants moved to dismiss the complaint for lack of standing pursuant to Mass. R. Civ. P. 12 (b) (1), 365 Mass. 754 (1974), arguing that the alleged injuries were "too generalized, conclusory, speculative, and unrelated to the area of concern addressed by the applicable bylaw to provide a basis for standing."[4]  In opposition, the plaintiffs submitted an affidavit from plaintiff Brian Coppenrath that averred, among other things,

_____

[4] At the time of these proceedings, the purpose of the bylaw, c. 9, § 9.1.1,

> "[wa]s to promote the health, safety, and general welfare
> of the residents of the [t]own of Carver, and to ensure
> that permanent changes in the surface contours of land
> resulting from the removal and regrading of earth materials
> will leave the land in a safe and convenient condition for
> appropriate reuse without requiring excessive and
> unreasonable maintenance or creating danger of damage to
> public and private property, as well as to provide that
> earth removal activities shall be conducted in a safe
> manner and with minimal detrimental effect upon the
> district in which the activities are located."

"The trucks and equipment used for the earth removal on the [s]ite enter and exit onto Tremont Street. Trucks and equipment that head south [from the site] pass by my house. . . . When I leave my house to go on to Tremont Street, I encounter truck traffic from the earth removal operations at the [s]ite. . . . On a near daily basis, I observe and hear the earth removal operations and the trucking of sand and gravel at the [s]ite starting early in the morning. . . . [They] cause a significant amount of noise. . . . On a near daily basis, I hear noise from truck traffic on Tremont Street. . . . [T]he number of trucks driving up and down Tremont Street has increased significantly. . . . The trucks also cause vibrations when they pass by [my house]. . . . Large earth removal trucks come down my residential street to turn around and some pull . . . in front of my house. . . . My entire house shakes from time to time from the trucking operations. . . . The additional noises and shaking of my house frequently disturb my newborn baby and often disrupt my baby's and my family's sleep patterns. . . . There is dirt and dust all over Tremont Street from [Pontiff's] earth removal operations[.] On many occasions, that dirt and dust blows or otherwise ends up on . . . my land and my house. . . . [Pontiff's operations] have had an adverse impact on my use and enjoyment of my [h]ome[, and] my personal health and wellbeing, including through . . . stress and anxiety."

The plaintiffs claimed that this was sufficient to confer standing because they showed particularized and nonspeculative injuries within the bylaw's zone of interests. The defendants countered that the plaintiffs "fail[ed] to establish individualized injuries to protected interests." The judge agreed with the defendants and dismissed the complaint for lack of standing. This appeal followed.

Discussion. 1. Legal standards. An action in the nature of certiorari, G. L. c. 249, § 4, "serves to correct errors of law in administrative proceedings where judicial oversight

4

otherwise is not available." Lippman v. Conservation Comm'n of Hopkinton, 80 Mass. App. Ct. 1, 5 (2011). "To obtain certiorari review of an administrative decision, the following three elements must be present: (1) a judicial or quasi judicial proceeding, (2) from which there is no other reasonably adequate remedy, and (3) a substantial injury or injustice arising from the proceeding under review." Indeck, 450 Mass. at 385. Because there is no dispute that the first two requirements of the statute have been met, the only question is whether the plaintiffs suffered "a substantial injury or injustice arising from" the issuance of the permit. Id. Put differently, we must determine whether the plaintiffs have standing to challenge the permit, see Friedman v. Conservation Comm'n of Edgartown, 62 Mass. App. Ct. 539, 541-543 (2004), "review[ing] the judge's legal rulings . . . de novo," Pishev v. Somerville, 95 Mass. App. Ct. 678, 682 (2019).

The declaratory judgment statute, G. L. c. 231A, § 1, creates no substantive rights, see Galipault v. Wash Rock Invs., LLC, 65 Mass. App. Ct. 73, 83-84 (2005), and "does not provide an independent statutory basis for standing," Enos v. Secretary of Envtl. Affairs, 432 Mass. 132, 135 (2000), citing Pratt v. Boston, 396 Mass. 37, 42-43 (1985). Its purpose is "to afford [plaintiffs] relief from . . . uncertainty and insecurity with respect to rights, duties, status[,] and other legal relations"

5

(citation omitted).  Lippman, 80 Mass. App. Ct. at 6.

Plaintiffs "must establish both an actual controversy and legal standing before the[ir] complaint [for declaratory judgment] may be heard."  Pishev, 95 Mass. App. Ct. at 682.  Here, if the plaintiffs fail to establish standing under the certiorari statute, their complaint seeking a declaratory judgment must likewise fail.  See Galipault, supra.

2.  Analysis.  The plaintiffs argue that they have standing because the activity under the permit caused them direct, substantial, nonspeculative injuries that were distinguishable from those suffered by the general public and were within the bylaw's zone of interests.  They also claim that failure to grant them standing in this case would "essentially freeze out anyone seeking to challenge an earth removal permit."  We are not persuaded.

The case of Fiske v. Selectmen of Hopkinton, 354 Mass. 269, 270-271 (1968), is instructive.  In Fiske, the court affirmed the dismissal of the certiorari action, concluding that the allegations were speculative and damages were generalized; "it [did] not appear from the petition . . . how [the plaintiffs were] substantially injured beyond the hypothetical injuries to the town . . . as a whole."  Id. at 271.  Indeed, the "requirements for abutters seeking to establish and retain standing are formidable."  Friedman, 62 Mass. App. Ct. at 544.

6

They must demonstrate a reasonable likelihood that they have suffered substantial injury to a protected legal right or manifest injustice. See Higby/Fulton Vineyard, LLC v. Board of Health of Tisbury, 70 Mass. App. Ct. 848, 850-851 (2007), citing Fiske, supra. This the plaintiffs did not do.

First, some of the plaintiffs' claims were speculative -- neither the complaint nor the affidavit established that well contamination, infestation of predatory animals, natural vista ruination, harmful silica emission, or property value reduction had occurred or will occur, and the plaintiffs do not contend otherwise. See Hickey v. Conservation Comm'n of Dennis, 93 Mass. App. Ct. 655, 658 (2018) (injuries speculative where raised "in a conclusory fashion" and "unsupported by expert evidence, technical analysis, or particular facts in the record that establish the purported risks" [brackets omitted]).

Second, to the extent that the injuries were not speculative, they were generalized -- the plaintiffs failed to establish how the permit "resulted in 'substantial injury' or 'manifest injustice' to them, rather than to the public in general." Friedman, 62 Mass. App. Ct. at 545, quoting Fiske, 354 Mass. at 271. See id. at 270-271 ("disagreeable dust and noise," "unsightly waste," depressed property values, and burdensome traffic caused by earth removal were generalized damages).

7

We are not unsympathetic to the plaintiffs' concerns, but standing as a matter of law "is not measured by the intensity of the[ir] interest[s] or the fervor of [their] advocacy."  Pratt, 396 Mass. at 42, quoting Valley Forge Christian College v. Americans United for Separation of Church & State, 454 U.S. 464, 486 (1982).  Because the plaintiffs failed to demonstrate a reasonable likelihood of substantial injury or manifest injustice directly resulting from the permit, they do not have standing and the complaint was properly dismissed.[5]  See Fiske, 354 Mass. at 271.

We are also not persuaded that the result here sets an "insurmountable bar" to establish standing that no other plaintiff will be able to overcome.  For abutters, demonstrating standing is "formidable," Friedman, 62 Mass. App. Ct. at 544,

---

[5] Because the plaintiffs' certiorari claim fails, so too does their request for declaratory relief.  See Galipault, 65 Mass. App. Ct. at 83-84.

8

but not impossible.  They must allege sufficient injuries to carry their burden, something the plaintiffs did not do here.

<u>Judgment affirmed</u>.

By the Court (Blake, C.J., Neyman & Grant, JJ.[6]),

Clerk

Entered:  March 2, 2026.

---

[6] The panelists are listed in order of seniority.